UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x
PIUS R. GUOBA, JR., SHERYLL P.
GUOBA,

                    Plaintiffs,                    <u>MEMORANDUM & ORDER</u>
                                                   03-CV-5039(JS)(WDW)


          -against-


SPORTSMAN PROPERTIES, INC., PROPERTY
MANAGEMENT, INC., SB CONTRACTING,
BARRY RICHTER, in his individual
and official capacity, FRANK
PIZZICAROLA, in his individual and
official capacity, INCORPORATED
VILLAGE OF FREEPORT, INCORPORATED
VILLAGE OF FREEPORT BUILDING
DEPARTMENT, JOSEPH MADIGAN, in his
individual and official capacity,
WILLIAM MELLO, a.k.a. BILL MELLO,
in his individual and official
capacity, and U.S. BANK MORTGAGE,
as a necessary party,

                    Defendants.

------------------------------------x

<u>Appearances</u>:
For Plaintiffs          Frederick K. Brewington, Esq.
                        Law Offices of Frederick K. Brewington
                        50 Clinton Street, Suite 501
                        Hempstead, NY 11550


For Defendants

Sportsman, PMI,         Jeffrey Herzberg, Esq.
Barry Richter           Zinker, Gelfand & Haerzberg LLP
and John Marra          278 East Main Street, Suite C
                        Smithtown, NY 11787


Frank Pizzicarola       Diana Marie Thornton, Esq.
                        Diana T. Bishop, Esq.
                        Epstein, Grammatico, Gann,
                        Frankini & Marotta
                        1393 Veterans Memorial Highway, Suite 414
                        Hauppauge, NY 11788

William Mello          Bruce A. Cook, Esq.
                       James M. Murphy, Esq.
                       Montfort, Healy, McGuire & Salley
                       1140 Franklin Avenue
                       P.O. Box 7677
                       Garden City, NY 11530

Village of Freeport    Harrison J. Edwards, Esq.
and Joseph Madigan     Village of Freeport
                       46 North Ocean Avenue
                       Freeport, NY 11520

SEYBERT, District Judge:

        The instant action arises from the Plaintiffs' purchase

of a home in the village of Freeport in May 2001.  The Amended

Complaint alleges eleven causes of action, including a claim that

Defendants engaged in a RICO[1] enterprise and conspiracy to take

Plaintiffs' property, and deprive them of their rights guaranteed

by the First and Fourteenth Amendment.  Pending before the Court

are three motions for summary judgment filed by: The Village of

Freeport, the Village of Freeport's Building Department

(collectively, the "Village") and Joseph Madigan ("Madigan"); Frank

Pizzicarola ("Pizzicarola"); and William Mello ("Mello").

<u>BACKGROUND</u>

        The facts presented herein have been gleaned from the

Parties' Rule 56.1 Statements and Counter-Statements, the exhibits

annexed thereto and, where appropriate, the pleadings submitted in

this action.

---

[1]     "RICO" stands for "Racketeering Influenced and Corrupt
Organizations."

2

The Village of Freeport is a municipal corporation duly formed under the laws of the State of New York. The Department of Buildings ("Building Department") is a department of the Village of Freeport and is not a separate legal entity. In May 2000, the Village granted Barry Richter ("Richter"), the President of Sportsman Properties, Inc. ("Sportsman"), a permit to build a new two-story, one family dwelling at 770 Miller Avenue, Freeport, New York (the "Premises"). (Village R. 56.1 Statement ¶ 5.) Frank Pizzicarola is a licensed home improvement contractor who worked on the Premises. (Pls.' R. 56.1 Counter-Statement to Pizzicarola's R. 56.1 Statement ¶ 2.) During the construction of the Premises and until May 9, 2001, Sportsman was its sole owner. (Village R. 56.1 ¶ 6.)

On March 27, 2001, Joseph Madigan, acting in his official capacity as the Superintendent of Buildings for the Incorporated Village of Freeport, issued a certificate of occupancy ("CO") for the Premises to Sportsman. (Id. ¶ 7.) In issuing the CO, Madigan relied upon the report of William Mello, a Village Building Inspector. (Pls.' 56.1 Counter Statement to Village's 56.1 ¶¶ 6-7, 16-18.) Madigan never personally inspected the Premises or otherwise observed its construction. (Village 56.1 ¶ 17.) On May 9, 2001, Plaintiffs Pius and Sheryll Guoba purchased the Premises from Sportsman for $395,000.00. (Pls.' R. 56.1 Counter-Statement

to Village ¶ 2.[2])  Plaintiffs never had any communication with the Village before the purchase.  (Mello R. 56.1 Statement ¶ 11.)

Soon after the purchase, Plaintiffs found numerous defects in the Premises, including a leaking roof, swaying floors, and an unstable deck.  (Id. ¶ 8.)  In March 2002, Pius Guoba telephoned the Building Department.  This was the Guobas' first direct contact with the Village. (Village 56.1 ¶ 10; Pls.' 56.1 ¶ 10.)  Eventually, Guoba spoke with Building Inspector Rocco Sagarese ("Sagarese") about the Premises' condition.  On March 27, 2002, Sagarese and Pei Dau-Liu ("Dau Liu"), an architect employed by the Village, visited the Premises.  Dau Liu found that the Premises were defective and were not constructed in accordance with the architectural plans on file with the Building Department.  (Pls.' 56.1 ¶ 10-11.)  He wrote Madigan a letter reporting his findings and Madigan, in turn, directed Sportsman to fix the deficiencies. (See Village Exs. 11, 13.)  To date, Plaintiffs have continuously owned, used, occupied and maintained control of the Premises.  It is not seriously disputed, however, that they did not receive the home that they bargained for.

Plaintiffs claim that Sportsman had a relationship with the Village, whereby the Village would issue COs for defective

---

[2]    It is apparent that the Village's Rule 56.1 Statement contains typographical errors concerning certain dates.  For example, the Village states that Plaintiffs purchased the Premises on May 9, 2002.  This, plainly, was not the case.

properties that the Village was aware would be used for residential purposes. As evidence of a relationship between the Village and Sportsman, the Guobas cite a telephone conversation that Pius Guoba had with Mello. Guoba questioned Mello concerning the issuance of the CO. Mello allegedly told Plaintiff that he was going away for a few days, and that he would address Plaintiffs' problems the following week. (Pls.' Counter-Statement to Village ¶ 18.) Moments later, Plaintiff received a menacing call from Richter. Richter intimated to Plaintiff that he had a relationship with the Building Department and, inter alia, informed Plaintiff, "You call back there again and I will finish you. I will finish you off, you hear me?" (Id.) Plaintiff also points out that Mello served as the inspector for 3-4 homes built by Defendant Richter and Sportsman, two of which were the subject of litigation due to faulty construction (one of which is the Premises). (Pls.' Counter-Statement to Mello' R. 56.1 Statement ¶ 17.)

The Amended Complaint alleges eleven "counts," or causes of action. The first two causes of action are RICO claims pursuant to 18 U.S.C. §§ 1961(c) and 1961(d). These two claims are brought against all Defendants. Plaintiffs' third and fourth claims are brought against the Village, Madigan and Mello pursuant to 42 U.S.C. § 1983. Plaintiffs claim that these Defendants, as state actors, violated their First and Fourteenth Amendment rights by improperly issuing COs for certain residences for their own gain.

Plaintiffs' fifth cause of action is for breach of contract. The claim is brought against Sportsman, Richter, Property Management Incorporated ("PMI") and John Marra ("Marra"), the President of SB Contracting. Plaintiffs' sixth cause of action is a claim for intentional misrepresentation and fraudulent concealment against Sportsman, Richter, PMI, Marra, the Village, Madigan and Mello. The seventh cause of action is for fraud in the inducement against the same Defendants. Plaintiffs' eighth cause of action is for "breach of good faith and fair dealing." This claim is brought against Sportsman, PMI, Richter and Marra. Plaintiffs' ninth and tenth claims are for common law negligence. The ninth claim is brought against Sportsman, PMI, Richter, Marra and Pizzicarola[3]; it is based upon the theory that the Premises were not constructed in a workmanlike manner. Plaintiffs' tenth claim is brought against the Village, Madigan and Mello based upon their failure to: (i) properly inspect the Premises before issuing the CO, (ii) notify Plaintiffs of the defects in the Premises, (iii) issue violations to the other Defendants for constructing the premises in an unworkmanlike manner. Plaintiffs' eleventh cause of action is not really a cause of action. Rather, it is a request for punitive damages with respect to all Defendants except the Village.

---

[3]    While Plaintiff provides alternative erroneous spellings of this Defendant's name, this is the correct spelling.

As explained above, there are presently three motions for summary judgment pending before this Court. The motions are brought by the Village and Madigan (jointly), Mello and Pizzicarola. The Village and Madigan move for summary judgment with respect to all claims. Mello moves for summary judgment with respect to all claims against him. Finally, Pizzicarola moves for summary judgment with respect to Plaintiffs' RICO and punitive damages claims. The Court will first set forth the appropriate standard of review and then address the pertinent claims.

<u>STANDARD OF REVIEW</u>

"Summary judgment is appropriate where there is no genuine dispute concerning any material facts, and where the moving party is entitled to judgment as a matter of law." <u>Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp (In re Blackwood Assocs., L.P.)</u>, 153 F.3d 61, 67 (2d Cir. 1998)(citing Fed. R. Civ. P. 56(c)); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997); <u>see also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine

whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134.

In responding to a motion for summary judgment, a plaintiff's "mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Indeed, when a motion for summary judgment is made, it is time to "'to put up or shut up.' . . . [U]nsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotations, citations omitted).

DISCUSSION

I.  Plaintiff's RICO Claims

Plaintiffs brings their RICO claims (Counts 1 and 2) pursuant to 18 U.S.C. §§ 1962(c) and 1962(d). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1962(d) makes it "unlawful for any person to conspire to violate . . . the provisions of subsection . . . (c)."

A plaintiff alleging a violation of § 1962(c) must establish "(1) conduct, (2) of an enterprise, (3) through a pattern

(4) of racketeering activity." <u>Anatian v. Coutts Bank Ltd.</u>, 193 F.3d 85, 88 (2d Cir. 1999) (quoting <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)). "Enterprise is defined to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." <u>First Capital Asset Mgmt., Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 173 (2d Cir. 2004) (internal quotations omitted). "The enterprise must be separate from the pattern of racketeering activity and distinct from the person conducting the affairs of the enterprise. . . . In perhaps its least developed form, an enterprise may be found where there is simply a discrete economic association existing separately from the racketeering activity . . . . [F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." <u>Id.</u> at 174.

"Pattern of racketeering activity is a defined term and requires at least two acts of racketeering activity . . . . Racketeering activity, in turn, is defined to include any act . . . involving . . . bribery . . . which is chargeable under state law and punishable by imprisonment for more than one year." <u>Salinas v. U.S.</u>, 522 U.S. 52, 62, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997) (internal quotations, citations omitted). Mail fraud and wire

fraud can also serve as RICO "predicate acts." <u>See</u> 18 U.S.C. § 1961.

In order to establish a violation of § 1962(d), Plaintiffs must establish that the Defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." <u>Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.</u>, 187 F.3d 229, 244-245 (2d Cir. 1999).

At the outset, the Court quickly dispenses with Plaintiffs' RICO claims against the Village. This Court agrees with Judge Arthur D. Spatt, and countless other courts in this Circuit, that a RICO claim may not be sustained against a municipality because the municipality, as a corporation, is incapable of possessing the requisite <u>mens</u> <u>rea</u> of the underlying predicate offenses. <u>See</u> <u>Nu-Life Constr. Corp. v. Bd. of Educ. of City of the New York</u>, 779 F. Supp. 248, 251 (E.D.N.Y. 1991); <u>see also</u> <u>Frooks v. Town of Cortlandt</u>, 997 F. Supp. 438, 457 (S.D.N.Y. 1998). Municipal officials, such as Mello and Madigan, may only be sued in their individual capacity. <u>See</u> <u>Wood v. Inc. Vill. of Patchogue of New York</u>, 311 F. Supp. 2d 344, 354 (E.D.N.Y. 2004).

Accordingly, the Court turns to Plaintiffs' RICO claims against Madigan, Mello and Pizzicarola. In their case statement, Plaintiffs describe one "association in fact" enterprise, the

"Residential Property Control Enterprise." (Pls.' RICO Case Statement ¶ 6.) Plaintiffs claim that Sportsman, Richter, Marra were "participants managers, employees, officers or directors" of the enterprise, and "Madigan, Mello and the Village" were associated therewith. (Id. ¶ 6(c).) The purpose of the purported enterprise was to: "regularly and continuously gain permission and license to construct homes of inferior, unsound and unsafe conditions . . . in an effort to gain economic benefit without consideration of the harm to be caused to the Plaintiffs." (Id. ¶ 7(b).) Plaintiffs' assertions concerning the "predicate acts" of the enterprise are found on pages 11-16 of the case statement, and are difficult to decipher. According to Plaintiffs, all Defendants committed mail and wire fraud as part of the pattern of racketeering activity. Plaintiffs' vague allegations concerning these Defendants' purported violation of the mail and wire fraud statutes would not even withstand a motion to dismiss, much less a motion for summary judgment. See Frooks v. Town of Cortlandt, 997 F. Supp. 438, 457-58 (S.D.N.Y. 1998) However, there are other aspects of Plaintiffs' RICO case that are lacking.

As a preliminary matter, the enterprise, as plead, is plainly insufficient. While Plaintiffs proffer conclusory averments about other civil suits against Sportsman and the Village (that do not seem to have any relationship with one another), they describe the "purpose" of the Residential Property Control

11

Enterprise only in terms of the harm that they sustained. (See Pls.' RICO Case Statement ¶ 7(b) (stating that the purpose of the enterprise was to, <u>inter</u> <u>alia</u> "gain economic benefit without consideration of the harm to be caused to the <u>Plaintiffs</u>. (emphasis added).) The allegation belies their assertion that the pattern of racketeering activity and the enterprise are separate and distinct. See <u>First Capital</u>, 385 F.3d at 173.

More importantly, there is no evidence that the alleged enterprise existed. There is no meaningful evidence of any connection between Sportsman, Richter, and Marra as "officers" and these individual Defendants as associates. See <u>id.</u> 174-75; <u>Stein v. New York Stair Cushion Co., Inc.</u>, 04-CV-4741, 2006 WL 319300, at *4 (E.D.N.Y. Feb. 11, 2006). Certainly, there is no proof that Madigan and Pizzicarola functioned in any sort of organization with each other, or any of the named Defendants to accomplish some illegitimate goal. There are no communications between these Defendants and any of the other Defendants indicating that they functioned as part of a unit. Nor is there, besides Plaintiffs' conclusory allegation, any evidence of the hierarchy or structure of this unit. See <u>Stein</u>, 2006 WL 319300 at *4.

Plaintiffs assert that one of the purposes of the association in fact was to economically benefit the "Defendants," but Plaintiffs have not provided any evidence that Madigan or Pizzicarola benefitted in any way from the alleged enterprise.

Notably, Madigan promptly responded to Plaintiffs' claim that their house was defective. He retained Liu to examine the Premises, and then ordered Sportsman to remedy the violations. (Village Exs. 11, 13.) Such facts plainly contradict the notion that he was an associate of any enterprise. With respect to Pizzicarola, Plaintiffs have established little more than the fact that he provided construction services to Sportsman. See Mandanes v. Mandanes, 981 F. Supp. 241, 256-57 (S.D.N.Y. 1997). Aside from allegedly adhering to Sportsman's instructions to take shortcuts in constructing the Premises, there is no evidence of his participation in any functioning unit or association. In addition, it is worth noting that Pizzicarola was never paid for a portion of his work.

Plaintiffs' circumstantial evidence of Mello's association with the enterprise is the phone call, his inspection work on other Sportsman residences, and the deficient nature of his examination of the Premises here. Beyond that, Plaintiff refers the Court, in conclusory fashion, to a pile of papers submitted in connection with their motion. None of these papers, however, demonstrate any connection between Mello and Sportsman, Richter or Marra. Furthermore, there are unrebutted explanations that whittle away any probative value of Plaintiffs' scant circumstantial evidence of Mello's association with the alleged enterprise. For example, while Plaintiffs ask this Court to infer Mello's criminal

association in the Residential Property Control Enterprise based upon the fact that he was assigned as the examiner on other defective Sportsman properties, it is undisputed that Mello was assigned to these properties because they were within a specific region of Freeport. Also of note, like Pizzicarola and Madigan, there is absolutely no evidence that Mello benefitted financially from any alleged association in fact, or engaged in any mail or wire fraud. There can be no dispute that Mello did a poor job of inspecting Plaintiffs' home, and indeed may have done a poor job of inspecting many other homes in the Village. But his deficient examination of homes is insufficient to establish his role in any enterprise.

Because there is insufficient evidence of the association in fact enterprise alleged by Plaintiffs, and there is insufficient evidence of these individual Defendants' commission of mail or wire fraud, the Court dismisses Plaintiffs' RICO claims against them.

II.  Plaintiff's § 1983 Claims

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). Municipalities may be held liable pursuant to § 1983, but only if the plaintiff can establish that the violation of their constitutional rights was part of a governmental custom,

14

policy, ordinance, regulation or decision.  <u>See</u> <u>Monell v. Dep't of</u> <u>Soc. Svcs.</u>, 436 U.S. 658, 690 (1978).  "[C]onstitutional torts committed by city employees without official sanction," are not sufficient to establish municipal liability pursuant to § 1983. <u>Amnesty America v. Town of W. Hartford</u>, 361 F.3d 113, 125 (2d Cir. 2004).

Here, Plaintiffs contend that they have "a constitutionally protected property interest in a certificate of occupancy and the procedure for same."  (Pls.' Mem. of Law in Opp. to the Village's Mot. for S.J. at 4.).  The Village, Madigan and Mello rely upon the Second Circuit's holding in <u>Zahra v. Town of</u> <u>Southold</u>, 48 F.3d 674, 681-2 (2d Cir. 1995), for the proposition that Plaintiffs have no constitutionally protected property interest in a well-performed municipal inspection of the Premises. The Court agrees.

In reaching this conclusion, the well reasoned opinion of Judge Arthur D. Spatt in <u>Bletter v. Inc. Village of Westhampton</u> <u>Beach</u>, 88 F. Supp. 2d 21 (E.D.N.Y. 2000), is instructive.  In <u>Bletter</u>, the plaintiff argued that the village inspector's failure to adequately inspect site plans "or review the plans at all" denied her a constitutionally protected property right - a properly issued certificate of occupancy.  <u>Id.</u> At 25.  Judge Spatt explained:

> although [plaintiff] could claim a property interest in
> a Certificate of Occupancy that was improperly withheld

> from her, she does not have a separate property interest
> in ensuring that the certification procedure results in
> a reliable Certificate. . . . "[T]o hold otherwise,
> aggrieved property owners would be empowered to bring
> constitutional challenges at virtually every stage of the
> building process in municipalities. We expressly decline
> to announce a rule that would obligate federal courts to
> consider endless numbers of alleged 'property interests'
> arising not from the benefits themselves but as
> extensions of existing or sought property interests."

Id. at 25-26 (quoting Zahra, 48 F.3d at 682).

Plaintiffs' efforts to distinguish their case from Bletter are unavailing. They suggest that a different rule should attach because of the alleged conspiratorial relationship between the Village and Sportsman. However, as explained above, Plaintiffs have failed to set forth any credible evidence corroborating their assertions. See supra, Section I. Accordingly, for the reasons explained above, Plaintiff's § 1983 substantive due process claims against the Village, Madigan and Mello are DISMISSED. To the extent Plaintiff alleges an Equal Protection violation based upon the Village's improper issuance of the CO, those claims are also DISMISSED. There is simply no sufficient evidence supporting a finding of any intentional discrimination against these Plaintiffs.

III. State Law Claims Against The Village, Madigan And Mello

Plaintiff alleges claims against the Village, Madigan and Mello for intentional misrepresentation and fraudulent concealment (Count 6), fraudulent inducement (Count 7) and negligence (Count 10). Defendants argue that Plaintiffs' state law claims must be dismissed in their entirety because: (1) Plaintiffs' claims are

time-barred; (2) they did not make any fraudulent representation to Plaintiffs; and (3) Plaintiffs' negligence claims are barred as a matter of law.

A.  <u>Negligence</u>

The Village, Madigan and Mello rely upon New York's notice of claim requirement, and the applicable limitations period as grounds for dismissing Plaintiffs' negligence claims.  New York General Municipal Law § 50-i provides, in pertinent part, that:

> no action or special proceeding shall be prosecuted or maintained against a . . . village . . . for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such . . . village . . . unless, (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with section fifty-e of this chapter.

N.Y. Gen. Mun. Law § 50-i(1).  In turn, § 50-e provides that:

> in any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law, or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises; except that in wrongful death actions, the ninety days shall run from the appointment of a representative of the decedent's estate.

<u>Id.</u> § 50-e.

In addition, these Defendants point out that § 50e-1 requires that a negligence action must be commenced within "one year and ninety days after the happening of the event upon which

17

the claim is based." N.Y. Gen. Mun. Law § 50-I. They cite several cases recognizing that, with respect to claims for negligently issued COs, the appropriate measuring date is the date when the CO is issued, not when a plaintiff learns of the defective condition of their home. <u>See</u> <u>Klein v. City of Yonkers</u>, 53 N.Y.2d 1011, 1013, 442 N.Y.S.2d 477 (1981) ("courts have uniformly concluded that the limitation period begins to run upon the happening of the event, irrespective of when the action accrued"); <u>Magaldino v. Town of Hurley</u>, 177 A.D.2d 906, 907, 576 N.Y.S.2d 664 (3d Dep't 1991); <u>Doyle v. 800 Inc.</u>, 72 A.D.2d 761, 421 N.Y.S. 2d 379 (2d Dep't 1979). For example, in <u>Magaldino</u>, the plaintiffs sought leave to serve a late notice of claim based upon the theory that the town negligently issued a building permit and CO, "thereby permitting the construction and approval of an inadequate septic system." 177 A.D.2d at 906. The New York Supreme Court granted the application, but the Appellate Division reversed. The <u>Magaldino</u> court explained:

> Contrary to petitioners' contention, the one year and 90-day Statute of Limitations of General Municipal Law § 50-i (1) (c) begins upon "the happening of the event upon which the claim is based." Here, that "event" is respondent's issuance of the building permit or certificate of occupancy attacked by petitioners. Inasmuch as the applicable limitations period had expired, Supreme Court lacked discretion to grant petitioners' application.

177 A.D.2d at 907 (internal citations omitted).

18

Plaintiffs cite virtually no case law in opposition to Defendants' argument. They simply assert that the instant case is distinguishable because it involves "strong evidence of fraud and active concealment of the municipality's liability." (Pls.' Mem. of Law in Opp. to the Village's Mot. for S.J. at 28.) However, as explained above, the "strong evidence" of fraud consists of nothing more than conclusory assertions. Moreover, the evidence indicates that the Village responded promptly to Plaintiffs' complaints. Compare with Corona v. Gallinger Realk Estate Better Homes & Gardens, Inc., 168 Misc. 2d 429, 434 (Onondaga County Sup. Ct. 1996) (applying equitable estoppel to allow the filing of a late notice of claim where the town building inspector mad edirect misrepresentations to plaintiff concerning the quality of the inspection of his home).

Because Plaintiffs' negligence claims against these Defendants is plainly untimely pursuant to § 51-i, those claims are hereby DISMISSED.[4] Accordingly, the Court need not address Defendants' remaining arguments concerning the timeliness of Plaintiffs' Notice of Claim, or the viability of a negligence claim against a municipality based upon its enforcement of its own

---

[4]     Plaintiffs have not challenged the assertion by Defendants Mello and Madigan that they were acting within the scope of their employment when the CO was issued, and thus are entitled to the benefit of the short limitations period. See Urraro v. Green, 106 A.D.2d 567, 568 (2d Dep't 1984).

statutes and regulations.  See Okie v. Village of Hamburg, 196
A.D.2d 228, 231, 609 N.Y.S.2d 986 (4th Dep't 1994).

B.  Fraud Claims

"The elements of a cause of action for fraudulent
misrepresentation in New York are that (1) the defendant made a
false representation of a material fact; (2) with knowledge of its
falsity; (3) with scienter, namely an intent to defraud the
plaintiff; (4) and upon which plaintiff justifiably relied; and (5)
thereby causing damage to the plaintiff."  New York Islanders
Hockey Club, LLP v. Comerica Bank--Texas, 71 F. Supp. 2d 108, 116
(E.D.N.Y. 1999).  Here, the only misrepresentation arguably made by
the Village or Madigan is the CO.  Importantly, there is no
evidence indicating that the Village or Madigan knew that the CO
should not have been issued, or acted with any intent to induce
Plaintiffs to purchase the Premises.  Thus, Plaintiffs' fraud claim
against the Village and Madigan must be DISMISSED.

Whether the claims should be dismissed with respect to
Mello presents a closer question.  In Safarowic v. Dinozzi Building
Corp., 206 A.D.2d 356, 357-58, 613 N.Y.S.2d 944 (2d Dep't 1994),
the Appellate Division, Second Department recognized that,
notwithstanding the dismissal of the claims against the Town,
Plaintiffs alleged a valid claim for fraud against the building
inspector.  Id. at 358 ("we find that the plaintiff's proposed
cause of action based on fraud and asserted against the Estate of

[the former supervising building inspector of the Town], is adequately pleaded. Also, unlike that cause of action . . . that is based on negligence, this cause of action is not subject to the same Statute of Limitations defense as that available to the Town"). The <u>Safarowic</u> court relied upon the fact that Plaintiff had alleged "blatant Building Code and Fire Code violations." <u>Id.</u> This case is procedurally distinguishable from <u>Safarowic</u> in so far as the motion pending before this Court is for summary judgment, while Safarowic only sought leave to amend the complaint.

As evidence of Mello's intent to defraud, Plaintiffs rely upon the aforementioned RICO enterprise. They also have provided the Court with a laundry list of violations, however, none of these are alleged to constitute a "blatant" safety violation, such that any fraudulent intent might be inferred. Plaintiffs assert that fraudulent intent may be inferred from Mello's deposition testimony that he failed to inspect the Premises after learning the bridgings were improperly installed, (Pls.' 56.1 ¶ 14.); yet Plaintiffs omit the testimony on the very same page that Mello testified that he made a telephone call to Marra, instructing him to install the proper bridging. (Mello Dep., Pls. K at 69.) Plaintiffs' Rule 56.1 Counter-Statement makes repeated references to Mello's failure to adhere to proper procedures (<u>see</u> <u>id.</u> ¶¶ 16 (stating Village Buildings Department general practice as detailed by Sagarese), 17 ("it was common practice for . . . Mello to inspect the

21

foundation"), and 18 ("Defendant Mello failed to follow general custom and practice"); but such failures, without more, amount to negligence, not fraud. In short, the Court finds that Plaintiffs' conclusory allegations concerning Mello's conduct are insufficient to support their fraud claim.

IV.  <u>Punitive Damages Claims Against Pizzicarola</u>

As pointed out by Pizzicarola, "it is hornbook law that there is no stand-alone claim in New York for punitive damages." <u>Shapira v. Charles Schwab & Co., Inc.</u>, 187 F. Supp. 2d 188, 192 (S.D.N.Y. 2002). However, not all claims against Pizzicarola have been dismissed. (<u>See</u> Am. Compl. ¶¶ 141-45 (Count 9).) Accordingly, Pizzicarola's motion to strike Plaintiffs' request for punitive damages is premature.

<u>CONCLUSION</u>

For the foregoing reasons, the Village and Madigan's motion for summary judgment is GRANTED; Mello's motion is GRANTED; and Pizzicarola's motion is GRANTED in part and DENIED in part.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     Central Islip, New York
           September  26 , 2006

23